UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-199 (DSD)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) GOVERNMENT'S SENTENCING ) MEMORANDUM ) |
| JAVON THOMAS WILSON-BRANCH, | ) ) |
| Defendant. | ) ) |

The United States of America, by and through its undersigned attorneys, hereby respectfully submits its position and memorandum on sentencing. For the reasons that follow, the United States recommends a sentence of imprisonment of 136 months, the midpoint of the advisory Guidelines range of 121 to 151 months, as a sentence that is sufficient but not greater than necessary to comport with the various Section 3553(a) factors.

**RELEVANT FACTS AND PROCEDURAL BACKGROUND**

The United States agrees with, and incorporates by reference, the facts from the "Offense Conduct" section of the PSR, ¶¶ 8-14, as well as those facts from the Plea Agreement (ECF 34, ¶ 2).

Between March 16 and 17, 2023, the defendant and two others committed three armed carjackings in less than 24 hours, under the cover of darkness, while possessing, brandishing, and using a loaded high-caliber, semiautomatic rifle and a loaded handgun, both equipped with high-capacity

magazines.  The defendant and his cohorts forced the victims to cede their keys, vehicles, and other possessions at gunpoint, and the victims stood by helplessly as the defendant drove away with their carjacked vehicles: a 2013 Mercedes Benz SUV, a 2005 Toyota Highlander, and a 2015 Audi A6.  The defendant forced one victim at gunpoint to unlock his cellphone, which was later used to make unauthorized money transfers from the victim's bank account to the defendant and others.

When police spotted and tried to stop the defendant in the recently carjacked Audi, he recklessly fled police at insanely high-rates of speed through residential areas, traveling over 100 miles-per-hour while ignoring stop signs and traffic lights.  Officers pursued the carjacked Audi onto the highway, where the defendant fled pursuing police at nearly 120 miles-per-hour, while recklessly weaving through traffic, until police terminated the pursuit.

On March 18, 2023, police located the carjacked Audi in a mall parking lot.  Inside the vehicle, police recovered the two firearms, each loaded with high-capacity magazines and one chambered round, used to carjack the several victims, and a box full of ammunition that had recently been stolen from a Cabela's store.












When police entered a mall store to find and arrest the defendant, he fled out the rear emergency exit and ran across Interstate 94 to a senior living facility. Police ultimately located and arrested the defendant in the facility's garage, hiding inside or near a parked vehicle.

During recorded Mirandized interviews, the defendant admitted to using the Springfield Armory rifle to carjack the 2013 Mercedes Benz SUV on March

4

16, 2023 with others. He also admitted to driving the carjacked SUV to Saint Paul and using a 9mm pistol to carjack the 2015 Audi A6 on March 17, 2023, while his associate used the Springfield Armory rifle. The defendant also admitted to driving the Audi from the scene and that police chased them for a short while, but that he got on I-35 and got away. And he admitted to driving the Audi, with the Springfield Armory rifle and the unserialized 9mm firearm, to Woodbury on March 18, 2023, prior to his arrest.

On May 23, 2023, a grand jury returned a five-count Indictment, charging the defendant with two counts of aiding and abetting carjacking, in violation of 18 U.S.C. §§ 2 and 2119(1), (Count 1 and Count 4), each of which carries a statutory maximum of 15 years' imprisonment, and two corresponding counts of aiding and abetting using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii), (Count 2 and Count 5), each of which carries a minimum-mandatory consecutive term of 7 years' imprisonment, and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), (Count 3), which carries a statutory maximum of 15 years' imprisonment. (See ECF 6; PSR ¶ 1)

In August 2023, the defendant appeared with his counsel and pleaded guilty to the two counts of aiding and abetting carjacking (Counts 1 and 4), and admitted to committing an uncharged third carjacking as relevant conduct,

5

pursuant to a written plea agreement filed with the Court. (PSR ¶ 2; ECF 33, 34, ¶¶ 1, 2.j.)

On December 20, 2023, the United States Probation Office filed a final PSR, finding the defendant's total combined offense level to be 30, and his criminal history category to be III,[1] resulting in an advisory Guidelines range of 121 to 151 months' imprisonment. (PSR ¶¶ 48, 70, 114) The PSR's Guidelines calculations did not differ from those of the plea agreement. (PSR ¶ 116; ECF 34, ¶ 7.g.)

## ARGUMENT

In following the sentencing methodology laid out by the Supreme Court, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50. Section 3553(a) requires the Court to consider a number of factors, including "the nature and circumstances of the

---

[1] The PSR also determined that the defendant had a total of 10 criminal history points, but accounting for the maximum of 4 points under USSG § 4A1.1(c), the total criminal history points were reduced to 6. (PSR ¶ 68) Additionally, although the defendant committed the instant offenses of conviction while on felony supervised release, no additional points were added because his criminal history score was less than 7. (PSR ¶ 69; USSG § 4A1.1(e)).

6

offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a). But a district court is not required to provide a mechanical recitation of the Section 3553(a) factors and has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence. *United States v. Miller*, 41 F.4th 1019, 1023 (8th Cir. 2022); *United States v. Wickman*, 988 F.3d 1065, 1067 (8th Cir. 2021).

### A.   The Guidelines Calculations

The United States agrees with the calculated total offense level of 30 and criminal history category of III, resulting in the Guidelines range of 121 to 151 months' imprisonment. For the reasons stated below, the United States advocates for a sentence of 136 months, the midpoint of the Guidelines range, as a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in Section 3553(a)(2).

### B.   The 3553(a) Factors

A consideration of all the 3553(a) factors warrants a sentence of 136 months. Notably, the defendant is receiving a significant break from the benefit of his plea agreement. As noted by the PSR, two counts of § 924(c) brandishing firearms during a crime of violence are to be dismissed (in addition

7

to one other count) at sentencing, each carrying an 84-month minimum consecutive term. (PSR ¶ 115; ECF 34, ¶ 1) Conviction on all counts would have resulted in a sentencing range of 24 to 26.5 years' imprisonment, as opposed to the present 10 to 12.5 year range. (PSR ¶ 115; ECF 34, ¶ 1)

        1.    <u>Nature and Circumstances of the Offense</u>

As highlighted above, in less than a 24-hour period in March 2023, the defendant and two others committed three armed carjackings at gunpoint of four victims under the cover of darkness, while using a loaded high-caliber, semiautomatic rifle and a loaded handgun, both equipped with fully loaded high-capacity magazines. The defendant's violent acts no doubt significantly traumatized his victims, including a 12-year-old girl, (PSR ¶ 16), as the defendant forced the victims to cede their keys, vehicles, and other possessions at gunpoint, and the victims stood by helplessly as the defendant drove away with their carjacked vehicles. The defendant even forced one victim at gunpoint to unlock his cellphone, which was later used to make unauthorized money transfers from the victim's bank account to the defendant and others.

The defendant also engaged in an incredibly reckless high-speed flight from police shortly after carjacking the Audi A6 at gunpoint, traveling over 100 miles-per-hour through residential areas, while ignoring stop signs and traffic lights, and fleeing at nearly 120 miles-per-hour on the highway, while recklessly weaving through traffic, until police terminated the pursuit.

8

The defendant even recklessly fled from police on foot, when they tried to arrest him, running across Interstate 94, and seeking to hide in or near a vehicle in the parking garage of a senior living center.

Undoubtedly, the defendant and his cohorts contributed to the spike in violent crime, including especially carjackings, experienced in the Twin Cities between 2021 and 2023.[2] The nature and circumstances of the defendant's crimes certainly call for the imposition of a significant sentence.

2. History and Characteristics of the Defendant

The United States submits that the PSR accurately and adequately describes the defendant's criminal history, personal history, and characteristics. While only 20 years old, the defendant has a remarkably extensive and violent criminal history, dating back to 2018 when he was only 14 years old, and he incurred his first felony adjudication for motor vehicle theft. (PSR ¶ 52) Between the ages of 14 and 16, the defendant accumulated nine felony adjudications, and two extended juvenile jurisdiction felony dispositions, for serious and violent felonies, including fleeing police in a motor vehicle, simple robbery, first-degree aggravated robbery, and first-degree burglary. (PSR ¶¶ 52-55, 59-64) The defendant was also adjudicated

---

[2] According to a December 12, 2021 WCCO News article, the Twin Cities experienced a significant rise in carjackings. "Minneapolis has had more than 500 reported in 2021. That's about 100 more than in 2020 — and five times more than in 2019." *See* https://minnesota.cbslocal.com/2021/12/12/edina-carjackings/?amp.

9

delinquent for four other misdemeanor and gross misdemeanor crimes, including theft and escape from custody. (PSR ¶¶ 56-58)

The defendant's criminal proclivity continued unabated between 17 and 19, incurring six additional state felony charges in three different counties, in addition to the five-count federal indictment for the present offenses of conviction. (PSR ¶¶ 72, 73, 75) The defendant has three active felony warrants for first-degree aggravated robbery, simply robbery, and first-degree burglary (among other felony charges) in three different counties, arising from those six pending felony charges (PSR ¶¶ 72, 73, 75), and an active misdemeanor warrant for fleeing in a fourth county, (PSR ¶ 74). The defendant's federal custodial record also raises concern, having incurred rule violations for threatening another inmate, reckless behavior, and tamping with security procedures. (PSR ¶ 76)

All told, the defendant has been involved in nearly constant and significant criminal activity and law enforcement contact—either through warrants, arrests, incarceration, or probation, since November 2018 through his arrest in March 2023. (PSR ¶¶ 52-66, 72-75, 133)

The defendant also has a significant substance abuse history, including daily use of marijuana, opioid abuse, and alcohol abuse, with no history of treatment. (PSR ¶¶ 97-98, 101) The defendant also has a self-reported history of compulsive gambling, and it is unclear whether he has earned a high-school

10

degree or equivalency. (PSR ¶¶ 91, 102-103) The defendant's mental and emotional health are also areas of concern, with various mental health diagnoses that appear to have not been adequately addressed or treated. (PSR ¶¶ 88-93) Undoubtedly, the defendant could readily benefit from substance abuse, mental health, and vocational/educational training and treatment programs while incarcerated at BOP and as part of his supervised-release conditions. But the defendant's history and characteristics also warrant a significant sentence.

### 3.  Needs of Sentencing and Other 3553(a) Factors

A sentence of 136 months is also warranted by the needs of sentencing and other Section 3553(a) factors. While certainly mitigating factors exist, such as the defendant's hugely dysfunctional upbringing, lack of parental relationship and guidance, history of significant physical and emotional abuse and neglect, exposure to substance abuse and violence, and living on the streets, but several aggravating factors also warrant consideration such as the serious, violent, and continuous nature of the defendant's criminal offenses, the defendant's gang membership, his ready-access to and use of firearms during repeated violent and felonious criminal conduct, and the abject lack of deterrence on the defendant's commission of serious felonies despite periods of incarceration and court-ordered supervision and programming. *See Ferguson v. United States*, 623 F.3d 627, 632 (8th Cir. 2010) ("Congress specifically made

general deterrence an appropriate consideration . . . and [the Eighth Circuit has] described it as 'one of the key purposes of sentencing.'") (quoting *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006)).

On balance, a sentence of 136 months' imprisonment would serve the needs of sentencing to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to avoid unwarranted sentencing disparities among defendants. The defendant could also benefit from substance-abuse treatment, mental-health programming, and vocational and educational training while incarcerated with the BOP and while on supervised release.

## CONCLUSION

For all the foregoing reasons, the United States respectfully recommends that the Court impose a sentence of 136 months and a three-year term of supervised release, with conditions that include being subject to search upon reasonable suspicion of contraband or other supervised-release violation.

Respectfully submitted,

Dated: January 18, 2024

ANDREW M. LUGER
United States Attorney

/s/ *Benjamin Bejar*

BY:  BENJAMIN BEJAR
Assistant United States Attorney
Attorney ID No. 351131